KAUFMANN & Co. *et al. v.* UNITED STATES (No. 1157).[1]

1. HIDES AND SKINS.
   There is a recognized distinction between "hides" and "skins" in tariff legislation, hides pertaining to animals of a larger size and skins to smaller animals.
2. ROUGH LEATHER.
   The provision for "rough leather" in paragraph 451, tariff act of 1909, was not intended to comprehend the tanned but unfinished skins of small animals.
3. UNSPLIT SEALSKINS, TANNED BUT NOT DRESSED OR FINISHED.
   The provision for "rough leather" not applying to these skins of the importation, they fall appropriately under the provision in the paragraph for "all other leather."

United States Court of Customs Appeals, January 29, 1914.

APPEAL from Board of United States General Appraisers, Abstract 30456 (T. D. 32943).
[Affirmed.]

*Comstock & Washburn* (*George J. Puckhafer* on the brief) for appellants.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in the present case consists of unsplit sealskins, which are tanned but not dressed or finished. The merchandise as imported is in an unfinished condition and is unfit for immediate use. After importation it is subjected to various processes

---

[1] Reported in T. D. 34167 (26 Treas. Dec., 229).

of treatment, whereupon it is used in the manufacture of suit cases, traveling bags, and like articles.

The collector assessed the articles with duty at 15 per cent ad valorem under the provision for "all other leather," contained in the second clause of paragraph 451 of the tariff act of 1909.

The importers duly protested, claiming assessment of the merchandise at 5 per cent ad valorem as "rough leather" under the first clause of the same paragraph.

The protest was submitted upon evidence to the Board of General Appraisers and was sustained. The case was reheard by the board upon the application of the Government, at which time a reexamination of the Government's witness was had. As a result of the rehearing the board overruled the protest and sustained the assessment. From that decision of the board the importers now appeal.

The following is a copy of the relevant parts of paragraph 451 of the. tariff act of 1909, subdivided into two parts for convenience of reference in the following decision:

451. (1) Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem.

(2) Dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; chamois skin, twenty per centum ad valorem; skins for morocco, tanned but unfinished, five per centum ad valorem.

It may be repeated that the issue is whether or not the merchandise in question is rough leather, dutiable as such under the first clause of the foregoing paragraph. This is the classification which the importers propose as a substitute for that adopted by the collector at the assessment.

The importers contend that the term "rough leather" covers and includes all leather which is tanned only and not dressed or finished, regardless of the kind of animal or the size of the hide or skin from which it is produced. The importers contend, moreover, that in any event the seal is commonly large enough in size to rank with the walrus, whose hide has repeatedly been held by the board to be rough leather when tanned only and not dressed or finished. Abstract 23769 (T. D. 30820).

The Government, upon the other hand, contends that the term "rough leather" implies two several conditions, first, that the leather in question be tanned only and not dressed or finished; and, second, that the leather be produced from the hides of certain of the larger animals, chiefly cattle of the bovine species, not including the skins of seals. The Government claims that the present importations are properly dutiable at 15 per cent ad valorem under the second clause of paragraph 451, either under the provision for "all other leather," or that for "other skins," and that in either event the protest was rightfully overruled.

The first contention of the importers, as above noted, is that all leather which is tanned only is dutiable as "rough leather," whether it comes from the hide of a large animal or the skin of a small one.

. The following testimony upon this issue is taken from the record and is part of the examination of George Wolf, an examiner at the port of New York:

Q. No; I am asking you whether there is a distinction between hides on the one hand and skins on the other?—A. Yes; there is a difference. * * * The term "hides" is applied to animals of the larger size, arid the term "skins" applies to the smaller animal.

Q. Is that a distinction that is recent, or have you always recognized it?—A. It is universal in the trade.

Q. Now, I ask you whether the leathers which I have enumerated above in paragraph 451 are leathers made from hides or skins, as you would define them?—A. All leathers of those descriptions are from hides.

The last question and answer relate to band, bend, or belting leather, rough leather, and sole leather, as enumerated in the first clause of paragraph 451.

The statement of the witness that the term "hides" applies to animals of the larger size, and the term "skins" to the smaller animals, is fully sustained by many reported findings and decisions. The Haberman case (T. D. 18739); the Berkovitz case (T. D. 32958); United States *v.* Helmrath (145 Fed., 36, 37). It is stated with authority in the Haberman decision, *supra*, that the foregoing distinction between hides and skins has been recognized in tariff legislation for more than 40 years. See also United States *v.* Richards (1 Ct. Cust. Appls., 537; T. D. 31548).

A comparison of the two parts of paragraph 451, above copied, strongly tends to sustain the claim that the first part includes only such leather therein enumerated as is produced from hides as contrasted with skins, leaving the second part of the paragraph to deal with leathers of various kinds produced from the skins of smaller animals.

This construction is especially suggested and supported by the provision for "skins for morocco, tanned but unfinished," which appears at the end of the second part of paragraph 451. In the first part of the paragraph Congress imposes a duty of 5 per cent ad valorem upon all "rough leather." In the second part of the same paragraph Congress imposes a duty of 15 per cent ad valorem upon "all other leather" and upon "other skins." According to the importers' construction the term "rough leather" would itself include all "skins for morocco, tanned but unfinished," and therefore without further provision or specification such skins would be dutiable at 5 per cent ad valorem under the first part of the paragraph. On the other hand, according to the Government's construction such "skins for morocco, tanned but unfinished," being the skins of smaller animals, viz, goats, sheep, and lambs, would be dutiable at the rate of 15 per cent ad valorem under the provision for "other leather"

or "other skins" in the second part of the paragraph. However, at the close of the second part of the paragraph as above divided appears the provision whereby "skins for morocco, tanned but unfinished," are specifically made dutiable at 5 per cent ad valorem. This provision fairly implies a legislative construction of the provisions in question similar to that claimed by the Government. For if tanned but unfinished goat, sheep, and lamb skins were already made dutiable at 5 per cent ad valorem as "rough leather" it was unnecessary again to specify that they should be dutiable at the same rate under the name of "skins for morocco"; whereas on the other hand if such goat, sheep, and lamb skins would have been dutiable at 15 per cent ad valorem as "other leather" or "other skins," the provision for "skins for morocco" would be necessary in order to reduce the duty from 15 to 5 per cent ad valorem. It follows that the contention of the importers denies all force and effect to the provision for "skins for morocco, tanned but unfinished," whereas the Government's construction gives that clause a consistent place among the provisions of the paragraph. This alone seems to be sufficient authority for the conclusion that the provision for "rough leather" in paragraph 451 was not intended or understood by Congress to comprehend the tanned but unfinished skins of small animals, but rather that such skins were covered by the second part of that paragraph, as above copied.

For their second contention, as above noted, the importers argue that sealskins are in any event commonly large enough to be described as "hides of larger animals," and therefore when tanned only should be classified, like walrus hides, as "rough leather" within the paragraph. In answer to this it may be noted that the decisions above cited invariably refer to hides as weighing 12 pounds or more in the dry and skins as weighing less than 12 pounds in the dry. In the present case the court has before it two sample skins taken from the importations and each of these weighs less than 3 pounds. Under the foregoing rule such articles would be skins, not hides. Furthermore the authorities refer to seals in general as furnishing skins, rather than hides, as witness the following definition from the Century Dictionary:

*Hide.* 2. An animal's skin stripped from its body and used as a material for leather or in other ways—as, a raw *hide;* a dressed *hide;* in the *leather trade*, specifically, the skin of a large animal, as an ox or a horse, as distinguished from *kips*, which are the skins of small or yearling cattle, and *skins*, which are those of small animals, as calves, sheep, goats, seals, etc.

The court therefore concludes that the term "rough leather," appearing in paragraph 451, covers only such tanned and unfinished leather as is derived from the hides of the larger animals, and that the importations do not belong to that class but are included within the opposing category of *skins.*

The decision of the board is *affirmed.*